**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**PACIFIC MUTUAL LIFE INSURANCE COMPANY, Respondent.**

No. 22580.

United States Court of Appeals Ninth Circuit.

June 11, 1969.

———◆———

Gilbert E. Andrews, Jr., Washington, D. C. (argued), Mitchell Rogovin, Asst. Atty. Gen., Meyer Rothwacks, Thomas L. Stapleton, Attys., Dept. of Justice, Lester Uretz, Chief Counsel, I. R. S., Washington, D. C., for petitioner.

Richard N. Mackay (argued), A. Calder Mackay, of Mackay, McGregor & Bennion, Los Angeles, Cal., for respondent.

Before JERTBERG, BROWNING and DUNIWAY, Circuit Judges.

JERTBERG, Circuit Judge:

Before us is a petition by the Commissioner of Internal Revenue to review a decision of the Tax Court of the United States [1] involving income taxes for the years 1958 through 1961, holding that the guaranteed renewable accident and health insurance contracts issued by the taxpayer, Pacific Mutual Life Insurance Company, were "issued or renewed for periods of five years or more" within the purview of Sec. 809(d) (5) of the Internal Revenue Code of 1954.

The following summary of facts is taken from the petitioner's opening brief, to which taxpayer offers no dissent in its answer brief.

Taxpayer, a life insurance company, issued a guaranteed renewable accident and health contract providing disability income benefits which was available to insureds whose age did not exceed 59 years. Under the terms of the policy, the insured was given the right to renew the policy for consecutive periods of one year each to age 65 by payment of the renewal premium for each such term. Taxpayer reserved the right to change the amount of the renewal premium on the basis of its applicable rate tables in effect on the due date, provided, however, that (1) no change was made in the rate tables applicable to the insured's policy unless such change was also made applicable to all policies providing like benefits and renewal rights and in the same rating class; (2) the rating class of the insured's policy was not changed because of any change in the insured's status, such as change of physical condition or occupation; and (3) each renewal premium was to be determined in accordance with the rating class and age of the insured at the date of issue. Taxpayer computed the premium rates on such guaranteed renewable accident and

1. Reported at 48 T.C. 118, three judges dissenting.

health policies on the basis that the premium would remain level to age 65, the same as it does for a life insurance policy with a term to age 65.

In determining its gain from operations (also referred to as the Phase II tax base), taxpayer claimed a deduction under Section 809(d) (5) of the 1954 Code, based upon the inclusion premiums received under the above policies in the computation of 3% of premiums attributable to nonparticipating contracts issued or renewed for periods of 5 years or more. The Commissioner determined that the contracts in question did not qualify under Section 809(d) (5) as "contracts * * * which are issued or renewed for periods of 5 years or more" and that the premiums attributable to the contracts accordingly were not to be included in computing taxpayer's Section 809(d) (5) deduction. The Tax Court held that the deduction should be allowed.

A specimen copy of the "Guaranteed Renewable Income Protection Policy" which was issued by taxpayer was received as an exhibit in the Tax Court proceedings (Exhibit 29–AC). Pertinent provisions appearing in the exhibit are:

"Initial Term 12 months

\* \* \* \* \* \*

"[T]his policy is issued for the above stated Initial Term, commencing at 12:00 noon Standard Time where the Insured resides, on the Date of Issue.

"The Insured shall have the right, prior to his 65th birthday, to renew this Policy for consecutive terms each of the same number of months as the Initial Term by payment to the Company of the renewal premium for each such term, which premium shall be due on the first day of each renewal term.

"The amount of each such renewal premium shall be determined from the Company's applicable table of rates in effect on the due date thereof, and the Company reserves the right to change from time to time the table of rates applicable to premiums thereafter becoming due.

"The Company, however, agrees that

(1) No change shall be made in the table of rates applicable to this Policy unless such change shall also be made applicable to all policies providing like benefits and renewal rights and of the same rating class;

(2) The rating class of this Policy shall not be changed because of any change in the Insured's status such as change of physical condition or occupation; and

(3) Each renewal premium shall be determined in accordance with the rating class and age of the Insured at Date of Issue."

The only specification of error relied upon by the Commissioner is that:

"The Tax Court erred in holding that taxpayer's one-year guaranteed renewable health and accident contracts were includable in computing the deduction provided by Section 809(d) (5) of the Internal Revenue Code of 1954 based upon 'nonparticipating contracts * * which are issued or renewed for periods of 5 years or more.' "

The statute involved is the Life Insurance Company Income Tax Act of 1959, 73 Stat. 112, Internal Revenue Code §§ 801–820, as amended.[2] Relevant provisions thereof are:

"Internal Revenue Code of 1954:

"SEC. 801. DEFINITION OF LIFE INSURANCE COMPANY.

\* \* \* \* \* \*

(e) Guaranteed Renewable Contracts.—For purposes of this part, guaranteed renewable life, health, and accident insurance shall be treated in the same manner as noncancellable life, health, and accident insurance.

2. The determination of the taxable income of a life insurance company is made under a detailed three-phase statutory formula. For a detailed discussion of the 1959 Act, see United States v. Atlas Insurance Co., 381 U.S. 233, 85 S.Ct. 1379, 14 L.Ed.2d 358 (1965).

\* \* \* \* \* \*

(26 U.S.C. 1964 ed. 801(e))"

"SEC. 809.   IN GENERAL.

\* \* \* \* \* \*

(d) Deductions.—For purposes of subsections (b) (1) and (2), there shall be allowed the following deductions:

\* \* \* \* \* \*

(5) Certain nonparticipating contracts.—An amount equal to 10 percent of the increase for the taxable year in the reserves for nonparticipating contracts or (if greater) an amount equal to 3 percent of the premiums for the taxable year (excluding that portion of the premiums which is allocable to annuity features) attributable to nonparticipating contracts (other than group contracts) which are issued or renewed for periods of 5 years or more.  For purposes of this paragraph, the term 'reserves for nonparticipating contracts' means such part of the life insurance reserves (excluding that portion of the reserves which is allocable to annuity features) as relates to nonparticipating contracts (other than group contracts).  For purposes of this paragraph and paragraph (6), the term 'premiums' means the net amount of the premiums and other consideration taken into account under subsection (c) (1).

\* \* \* \* \* \*

(26 U.S.C. 1964 ed., Sec. 809)."

Relevant regulations called to our attention are: "Treasury Regulations on Income Tax (1954 Code):

"Sec. 1.801–3.  Definitions.

\* \* \* \* \* \*

(d) *Guaranteed renewable life, health, and accident insurance policy.*  The term 'guaranteed renewable life, health, and accident insurance policy' means a health and accident contract, or a health and accident contract combined with a life insurance or annuity contract, which is not cancellable by the company but under which the company reserves the right to adjust premium rates by classes in accordance with its experience under the type of policy involved, and with respect to which a reserve in addition to the unearned premiums (as defined in paragraph (e) of this section) must be carried to cover that obligation.  Section 801(e) provides that such policies shall be treated in the same manner as noncancellable life, health, and accident insurance policies. \* \* \*

\* \* \* \* \* \*

(26 C.F.D., Sec. 1.801–3(d))."

"Sec. 1.809–5.  Deductions.

(a) *Deductions allowed.*  Section 809(d) provides the following deductions for purposes of determining gain or loss from operations under section 809(b) (1) and (2), respectively:

\* \* \* \* \* \*

(5) *Certain nonparticipating contracts.*

\* \* \* \* \* \*

(iv) \* \* \*  The determination of whether a contract meets the 5-year requirement shall be made as of the date the contract is issued, or as of the date it is renewed, whichever is applicable.  Thus, a 20-year nonparticipating endowment policy shall qualify for the deduction under section 809(d) (5), even though the insured subsequently dies at the end of the second year, since the policy is issued for a period of 5 years or more.  However, a 1-year renewable term contract shall not qualify, since as of the date it is issued (or of any renewal date) it is not issued (or renewed) for a period of 5 years or more.  In like manner, a policy originally issued for a 3-year period and subsequently renewed for an additional 3-year period shall not qualify.  However, if this policy is renewed for a period of 5 years or more, the policy shall qualify for

the deduction under section 809(d)(5) from the date it is renewed.

\* \* \* \* \* \*

(26 C.F.R., Sec. 1.809–5)."

As noted, Section 809(d)(5) provides an alternative deduction in

"an amount equal to 3 percent of the premiums for the taxable year (excluding that portion of the premiums which is allocable to annuity features) attributable to nonparticipating contracts (other than group contracts) which are issued or renewed for periods of 5 years or more. \* \* \* "

The reasons for including the alternative 3 percent deduction were explained by the Senate Finance Committee as follows:

"5. *Deduction for nonparticipating policies.*—Policyholder dividends in part reflect the fact that mutual insurance is usually written on a higher initial premium basis than nonparticipating insurance, and thus the premiums returned as policyholder dividends, in part, can be viewed as a return of redundant premium charges. However, such amounts provide a 'cushion' for mutual insurance companies which can be used to meet various contingencies. To have funds equivalent to a mutual company's redundant premiums, stock companies must maintain relatively larger surplus and capital accounts, and in their case the surplus generally must be provided out of taxable income. To compensate for this, the House bill allows a deduction for nonparticipating insurance equal to 10 percent of the increase in life insurance reserves attributable to nonparticipating life insurance (not including annuities). Your committee has recognized the validity of the reasons for providing such a deduction and has therefore continued it in your committee's version of the bill. However, basing this addition, as does the House bill, only upon additions to life insurance reserves does not take account of the mortality risk factor present in policies involving only small re-serves. To overcome this deficiency, your committee's amendments provide that a special 3 percent deduction based on premiums is to apply, instead of the 10 percent deduction, where it results in a larger deduction. This is a deduction equal to 3 percent of the premiums for the current year attributable to nonparticipating policies (other than group or annuity contracts) issued or renewed for a period of 5 years or more." S.Rep.No. 291, 86th Cong., 1st Sess., pp. 54–55 (1959–2 Cum. Bull. 770, 810), U.S.Code Cong. & Admin.News 1959, p. 1597.

The Senate, in discussing the minimum five year requirement, stated:

"The determination of whether a contract meets the 5-year requirement will be made as of the date it was issued, or as of the date it was renewed, whichever is applicable. Thus, a 20-year nonparticipating endowment policy will qualify under section 809(d)(5), even though the individual insured subsequently dies at the end of the second year, since the policy was issued for a period of 5 years or more. However, a 1-year renewable term contract will not qualify, in that, as of the date it was issued (or of any renewal date) it was not issued (or renewed) for a period of 5 years or more. In like manner, a policy originally issued for a 3-year period and subsequently renewed for an additional 3-year period will not qualify. However, if this policy were renewed for a period of 5 years or more, the policy would qualify under section 809(d)(5) from the date it was renewed. \* \* \* " S.Rep.No. 291, 86th Cong., 1st Sess., p. 55 (1959–2 Cum. Bull. 770, 810), U.S.Code Cong. & Admin.News 1959, p. 1631.

In reference to Guaranteed Renewable Contracts, the Committee states:

"5. Guaranteed renewable contracts.—Both the House bill and your committee's bill provide that guaranteed renewable life, health, and accident insurance will be treated in the

same manner as noncancelable life, health, and accident insurance. Reserves with respect to such insurance will, therefore, be treated in the same manner as life insurance reserves for purposes of computing taxable investment income and gains from operations. The type of insurance contracts referred to are life, health, and accident policies which are not cancelable by the company but under which the insurance company reserves the right to adjust premium rates by classes, in accordance with experience under the type of policy involved. By including such contracts specifically within life insurance reserves for the future, your committee intends no inferences to be drawn as to their tax treatment under prior law." S.Rep.No. 291, 86th Cong., 1st Sess. (1959–2 Cum.Bull. 770, 793), U.S.Code Cong. & Admin.News, p. 1606.

In the course of its opinion, the Tax Court stated:

"[W]e think the insurance contracts in question satisfy the statutory definition of section 809(d) (5) in that they are, in essence, 'issued * * * for periods of 5 years or more.' The 1-year option guarantee is not a 'renewal' but rather part and parcel of the original insurance contract. The insured's coverage under the contract continues for the full 5-year period subject only to petitioner's right to increase annual premiums within stated limits. In substance, the contract guarantees the insured's 'renewal' right, not for 5 successive yearly periods, but for one 5-year period with the right in petitioner to alter the premium. If we were to hold that the term of petitioner's guaranteed renewable policies in question was less than 5 years merely because an insured had the power to terminate such a policy, we would be required to hold the same way as to all nonparticipating insurance contracts, even though the policy was issued for 5 years or more. Since we are convinced that such a result is manifestly excluded by the language

employed in section 809(d) (5), we conclude that petitioner's guaranteed renewable policy was 'issued * * * for a period of 5 years or more' and that petitioner was entitled to use the 3 percent alternative deduction in computing its phase 2 gain from operations under section 809."

We believe that the Tax Court erred in concluding that the taxpayer's "Guaranteed Renewable Income Protection Policy" was issued or renewed for periods of 5 years or more. In our view such construction is contrary to the plain meaning of the language employed by Congress in creating the alternative deduction provided in Sec. 809(d) (5), the rationale giving rise to such provision, and Congressional intent, as reflected in its legislative history.

As stated in the dissenting opinion of Judge Simpson of the Tax Court:

"The purpose of allowing the 3-percent deduction provided in section 809 (d) (5) was to permit insurance companies issuing nonparticipating policies to accumulate additional surplus tax-free. Companies issuing participating policies can charge larger premiums and in this manner retain surplus to protect against unanticipated adverse experience. The additional surplus which can be accumulated by reason of section 809(d) (5) provides similar protection for companies issuing nonparticipating policies.

"Although the legislative history fails to explain the reason for the requirement that the policy be issued for 5 years, it seems clear that the accumulation of increased surplus was necessary only when the insurance company was committed for a 5-year or longer period. If the company is free to adjust its rates at any time when its experience proves to be more unfavorable than expected, there is no need for allowing the tax-free buildup of increased surplus. In the case of noncancellable accident and health policies, the company cannot adjust its rates notwithstanding unfavorable

experience. However, in the case of the guaranteed renewable policies involved herein, petitioner could alter its rate schedule. It could not increase the rates of an individual policyholder merely because he became an increased risk, but it could increase the rates for the class of policies if it became apparent that the risks for the whole class were greater than expected.

"In deciding whether a guaranteed renewable policy is issued for 5 years, I recognize that such a policy may be continued for 5 or more years and that in some respects the company is committed—it cannot decline to renew the policy at the end of any year and can make only limited changes in its terms. However, since the company is free to adjust its rate schedule, there is no reason to permit the tax-free accumulation of additional surplus to protect against unanticipated risks in connection with these guaranteed renewable policies; * * *"

The taxpayer contends that even if the Tax Court erred in concluding that its Guaranteed Renewable Accident and Health Contract was issued or renewed for periods of five years or more, taxpayer is nevertheless entitled to the benefit of the 3% of premiums deduction provided for in Sec. 809(d) (5) because of the provisions of Sec. 801(e) quoted, *supra*. This alternative ground was asserted by taxpayer in the Tax Court but is not commented upon either in the majority or dissenting opinion. It is, however, asserted on this appeal.

Taxpayer calls attention to the facts:

(a) that Sec. 801(e), as well as Sec. 809(d) (5) are contained in Part I of Subchapter L, which includes all of the sections relating to the taxation of life insurance companies; and

(b) that the only limitation placed upon nonparticipating contracts by Sec. 809(d) (5) in order to qualify for the benefit of the 3% of premiums deduction is that they be issued or renewed for periods of five years or more.

Based on the foregoing premises, taxpayer argues that under Sec. 801(e) its Guaranteed Renewable Accident and Health Contracts "shall be treated in the same manner as noncancellable life, health and accident insurance."

We are not persuaded by taxpayer's argument.

Sections 801 and 809 were adopted as parts of a single Act, the Act of June 25, 1959, Pub.L. 86–69, 73 Stat. 112. The legislative history quoted, *supra,* is pertinent and applicable to both sections.

Sec. 801 is a definition section. Sec. 801(e) does not specify the period of time for which "guaranteed renewable life, health and accident insurance" shall be issued or renewed. The alternative deduction provided for in Sec. 809(d) (5) —an amount equal to 3% of the premiums—is restricted to nonparticipating contracts "which are issued or renewed for periods of 5 years or more."

To avoid inconsistent treatment of the same insurance contract under Sec. 801 (e), and under Sec. 809(d) (5), and in light of the reasons and purpose behind the enactment of the alternative deduction provision contained in Sec. 809(d) (5), we are of the view that Congress impliedly adopted as part of Sec. 801(e) the requirement contained in the alternative deduction provision of Sec. 809(d) (5) that the contracts mentioned in Sec. 801(e) be issued or renewed for periods of five years or more. Since we have earlier in this opinion held that the Tax Court erred in concluding that the taxpayer's "Guaranteed Renewable Income Protection Policy" was issued or renewed for periods of five years or more, Sec. 801(e) is not relevant and furnishes no support for taxpayer's alternative ground.

The decision of the Tax Court is reversed.