OLD EQUITY LIFE INSURANCE COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6132–71, 7897–72, 8930–73. Filed October 18, 1976.

---

*Joseph E. Springer, Donald E. Casey, Edward M. Springer, Gary E. Dienstag,* and *Barton J. Springer,* for the petitioner.
*Seymour I. Sherman,* for the respondent.

WILBUR, *Judge:* Respondent has determined deficiencies in petitioner's Federal income tax as follows:

| TYE Dec.31— | Deficiency | TYE Dec.31— | Deficiency |
|---|---|---|---|
| 1964 | $17,537.88 | 1969 | $52,503.68 |
| 1965 | 17,236.23 | 1970 | 110,340.06 |
| 1966 | 33,116.01 | 1971 | 44,106.53 |
| 1968 | 2,688.83 | | |

The issues presented for decision are (1) whether petitioner's individual nonparticipating guaranteed renewable accident and health insurance contracts are "issued or renewed for periods of 5 years or more" within the meaning of section 809(d)(5),[1] thereby entitling petitioner to the 3-percent deduction for premiums provided in such section and (2) if not, whether petitioner is entitled to the 2-percent deduction for such contracts as provided in section 809(d)(6).

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioner is a corporation originally organized in 1950 as a capital stock life insurance company under Indiana law. As of December 31, 1968, petitioner underwent a reorganization, whereby its State of incorporation was changed to Illinois. At all times here pertinent petitioner has been a corporation with its principal office and place of business in Evanston, Ill. Petitioner filed its life insurance company income tax returns for the calendar years 1964 through 1968 with the District Director at Indianapolis, Ind., and its life insurance company income tax returns for the calendar years 1969 through 1971 with the Internal Revenue Service Center at Kansas City, Mo.

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.

During the taxable years in issue, petitioner had issued various types of insurance contracts, including certain policies or contracts which were guaranteed renewable individual nonparticipating accident and health insurance contracts (guaranteed renewable policies). A guaranteed renewable policy is a health and accident insurance contract, or a health and accident insurance contract combined with a life insurance or annuity contract, which is not cancelable by the insurer, but under which the insurer reserves the right to adjust premium rates by class in accordance with its experience under the type of policy involved, and with respect to which a reserve, in addition to an unearned premium reserve, must be carried to cover the obligation. A class of insureds may be defined as insureds having the same policy form, being of the same age, sex, and occupational risk classification, and sometimes also residing in the same State.

Petitioner's guaranteed renewable contracts were renewable by the insured either for life or to the age specified (in every instance here being to age 65 or later), in accordance with the terms of the particular policy. All of petitioner's guaranteed renewable policies were issued for a minimum term of 5 years. Where any of petitioner's guaranteed renewable contracts were issued to the stated age of 65, the maximum age of the insured at the date of issue could not exceed 60; and on a contract issued by petitioner to the stated age of 70, the maximum age of the insured on the date of issue could not exceed 65. The insured continued the policy simply by paying the premiums provided in the contract. Aside from the right to adjust premium rates by class, petitioner could not alter or amend any provision of its guaranteed renewable contracts during their entire terms.

Three-fourths of the States in which petitioner does business require prior approval (and/or) actuarial justification for an increase in premium rates with respect to guaranteed renewable accident and health contracts. Seeking a rate increase is generally a difficult and time-consuming process. A number of business and economic constraints often cause an insurer to hesitate to increase a premium rate, notwithstanding unfavorable experience on the Contract. Moreover, even where a premium rate increase is granted, the

increase with respect to any policy form is prospective only, and the insurer cannot recoup prior losses.

For each of the taxable years 1964 to 1971, inclusive, petitioner issued individual nonparticipating accident and health insurance contracts, and received premiums attributable thereto in the following amounts and allocable as follows:

| Year | Cancelable contracts | Noncancelable contracts | Guaranteed renewable contracts | Total |
|---|---|---|---|---|
| 1964 | $4,972,803.36 | $568,903.88 | $4,333,356.39 | $9,875,063.63 |
| 1965 | 4,457,622.65 | 488,504.91 | 3,982,528.93 | 8,928,656.49 |
| 1966 | 3,791,562.42 | 420,012.18 | 4,257,208.98 | 8,468,783.58 |
| 1967 | 3,373,670.62 | 368,577.10 | 4,751,846.17 | 8,494,093.89 |
| 1968 | 3,064,501.19 | 353,908.09 | 6,128,013.48 | 9,546,422.76 |
| 1969 | 2,828,534.94 | 192,018.29 | 6,545,690.99 | 9,566,244.22 |
| 1970 | 2,954,761.18 | 254,942.84 | 7,844,115.05 | 11,053,819.07 |
| 1971 | 3,013,678.85 | 199,818.47 | 8,570,919.49 | 11,784,416.81 |

A noncancelable policy is a health and accident insurance contract, or a health and accident insurance contract combined with a life insurance or annuity contract, which the insurer is under an obligation to renew or continue at a specified premium. A guaranteed renewable policy and a noncancelable policy are indistinguishable except for the fact that under the guaranteed renewable policy the insurer is entitled to raise premium rates by class, and the premium charged for a noncancelable policy will consequently normally be higher. Under both types of policies, a reserve, in addition to the unearned premium reserve, must be carried to cover the obligation. The reserves for the guaranteed renewable policies are computed on the same basis as that used to compute reserves for noncancelable policies.

## OPINION

Petitioner filed its returns for the taxable years in issue as a life insurance company. Under the Life Insurance Company Tax Act of 1959, the taxable income of life insurance companies is determined by a complex three-phase formula. The first phase of this formula, taxable investment income, represents the life insurance company's share of its net investment income. To the tax base established by phase 1, phase 2 adds 50 percent of the excess of the company's gain from operations over the taxable investment income. Gain

from operations represents the company's total net income and consists primarily of underwriting gain, i.e., mortality and loadings savings. Finally, there is taxed the phase 3 income, which consists of the previously deferred gain from operations which is made available to the shareholders.[2]

The first issue here is whether, in computing its phase 2 income, petitioner is entitled to the 3-percent deduction provided in section 809(d)(5) for premiums attributable to its guaranteed renewable policies. Section 809(d)(5) provides a deduction equal to 10 percent of the increase in reserves for the taxable year attributable to nonparticipating contracts, or if greater, a deduction equal to 3 percent of the premiums attributable to nonparticipating contracts "issued or renewed for periods of 5 years or more."[3]

The respondent argues that petitioner's guaranteed renewable contracts are similar to 1-year renewable term contracts, in that the guaranteed renewable contracts permit premiums to be increased by policy class. Since the Senate Finance Committee Report states that a 1-year renewable term contract, not being issued for a period of 5 years or more, does not qualify for the alternative 3-percent deduction, respondent concludes that guaranteed renewable policies are similarly ineligible for the alternative deduction.[4]

---

[2] Phase 3 applies only to stock, as opposed to mutual, insurance companies.

[3] SEC. 809. IN GENERAL.

(d) DEDUCTIONS.—For purposes of subsections (b)(1) and (2), there shall be allowed the following deductions:

    * * *

    (5) CERTAIN NONPARTICIPATING CONTRACTS.—An amount equal to 10 percent of the increase for the taxable year in the reserves for nonparticipating contracts or (if greater) an amount equal to 3 percent of the premiums for the taxable year (excluding that portion of the premiums which is allocable to annuity features) attributable to nonparticipating contracts (other than group contracts) which are issued or renewed for periods of 5 years or more. For purposes of this paragraph, the term "reserves for nonparticipating contracts" means such part of the life insurance reserves (excluding that portion of the reserves which is allocable to annuity features) as relates to nonparticipating contracts (other than group contracts). For purposes of this paragraph and paragraph (6), the term "premiums" means the net amount of the premiums and other consideration taken into account under subsection (c)(1).

[4] The report of the Senate Finance Committee, which added the alternative 3 percent of premium deduction to the House-passed bill, states:

"The determination of whether a contract meets the 5-year requirement will be made as of the date it was issued, or as of the date it was renewed, whichever is applicable. * * * a 1-year renewable term contract will not qualify, in that, as of the date it was issued (or of any renewal date) it was not issued (or renewed) for a period of 5 years or

Conversely, petitioner argues that guaranteed renewable contracts are quite different from 1-year renewable term, involving long-term risks analogous to noncancelable contracts which respondent freely concedes qualify for the alternative deduction. Petitioner also notes that section 801(e) requires that "guaranteed renewable life, health, and accident insurance shall be treated in the same manner as noncancellable life, health, and accident insurance."

This precise issue was before us in *Pacific Mutual Life Insurance Co.,* 48 T.C. 118, 119 (1967). We held that the guaranteed renewable accident and health contracts therein were "issued * * * for periods of 5 years or more" and that the taxpayer was entitled to use the 3-percent alternative deduction provided in section 809(d)(5) in computing its phase 2 income. Respondent, while conceding that the petitioner is within the ambit of our prior decision, urges us to reconsider our view in light of the reversal of this case by the Ninth Circuit. *Commissioner v. Pacific Mutual Life Insurance Co.,* 413 F.2d 55 (9th Cir. 1969).

Subsequent to the Ninth Circuit's opinion in *Pacific Mutual,* the United States Court of Claims agreed with the position of this Court, specifically rejecting the reasoning of the Ninth Circuit's reversal, and held that guaranteed renewable contracts qualify for the alternative 3-percent deduction. *United American Insurance Co. v. United States,* 475 F.2d 612 (Ct. Cl. 1973).

We have, as respondent has requested, reexamined our holding in *Pacific Mutual Life Insurance Co., supra,* in the light of the reversal by the Ninth Circuit. We respectfully decline to follow the reversal by the Ninth Circuit and, for the reasons hereafter set out, reaffirm our prior decision.

Section 801(e) clearly states that for purposes of the life insurance tax provisions in part I of subchapter L—which includes section 809(d)(5)—no distinction shall be made between noncancelable contracts and guaranteed renewable contracts. The exact language reads:

more. In like manner, a policy originally issued for a 3-year period and subsequently renewed for an additional 3-year period will not qualify. However, if this policy were renewed for a period of 5 years or more, the policy would qualify under section 809(d)(5) from the date it was renewed. * * * [S. Rept. No. 291, 86th Cong., 1st Sess. 55 (1959), 1959–2 C.B. 770, 810.]"

(e) GUARANTEED RENEWABLE CONTRACTS.—*For purposes of this part, guaranteed renewable life, health, and accident insurance shall be treated in the same manner as noncancellable life, health, and accident insurance. [Emphasis added.]*

The legislative draftsmen, in order to promote clarity and consistency, included this statement at the beginning of part I of subchapter L, in the definition section. This is a standard technique employed by legislative draftsmen to avoid repetition and the chance of unintended differences when faced with recurring situations.[5]

This short declarative sentence is unequivocally clear; it unmistakably requires that—in applying section 809(d)(5) (which is included in part I of subchapter L)—guaranteed renewable and noncancelable insurance "shall be treated in the same manner." While the provisions of subchapter L are complex, this in no way obscures the plain meaning of the specific statutory language before us. Nevertheless, rather than identifying guaranteed renewable contracts with noncancelable contracts and treating them "in the same manner" as the statute clearly requires, respondent argues that guaranteed renewable policies should be identified with 1-year renewable term insurance. As noted above, the Finance Committee Report underlying section 809(d)(5) states that 1-year renewable term is not issued or renewed for a period of 5 years.[6]

This construction cannot coexist with the statute and is unsupported by the legislative history. Congress carefully focused on and clearly understood the nature of guaranteed renewable contracts. Indeed, the applicable committee reports contain definitions of guaranteed renewable contracts virtually identical to the definition the parties herein included in the stipulation of facts.[7] The only significant difference

---

[5] "If a term recurs throughout the instrument, title, part, or other subdivision, it can be handled once and for all in a single provision, located usually at or near the beginning of the segment involved, where custom suggests that it is most likely to be looked for." Dickerson, The Fundamentals of Legal Drafting 65, 98 (Little-Brown 1965). See secs. 992 and 993 for one of many examples where this technique has been extensively employed and also appears virtually indispensable. See also *United American Insurance Co. v. United States,* 475 F.2d 612, 619 (Ct. Cl. 1973).

[6] See S. Rept. No. 291, *supra* n. 4.

[7] H. Rept. No. 34, 86th Cong., 1st Sess. 18 (1959), 1959–2 C.B. 736, 748, provides: "The bill provides that guaranteed renewable life, health, and accident insurance will be treated in the same manner as noncancelable life, health, and accident insurance.

between guaranteed renewable and noncancelable contracts is the right to adjust the premiums of the former by policy class. Congress was clearly aware of this difference, and nevertheless included explicit language in the statute requiring that they be treated "in the same manner." Providing very different treatment on the basis of this one basic distinction hardly strikes us as treating these contracts "in the same manner."

There are occasions when courts are confronted with a factual situation not contemplated by Congress, or with ambiguities unavoidably arising from a complex statute. We do not believe this is such an occasion, since Congress specifically focused on guaranteed renewable contracts and employed standard drafting techniques to clearly tell us how they wanted them treated.

We also believe that a careful analysis of the legislative history will reveal that this construction is in harmony with the legislative purpose underlying section 809(d)(5). The Senate Finance Committee Report explained the specific problem Congress was addressing in developing section 809(d)(5) as follows:

5. *Deduction for nonparticipating policies.*—Policyholder dividends in part reflect the fact that mutual insurance is usually written on a higher initial premium basis than nonparticipating insurance, and thus the premiums returned as policyholder dividends, in part, can be viewed as a return of redundant premium charges. However, such amounts provide a "cushion" for mutual insurance companies which can be used to meet various contingencies. To have funds equivalent to a mutual company's redundant premiums, stock companies must maintain relatively larger surplus and capital accounts, and in their case the surplus generally must be provided out of taxable income. * * * [S. Rept. No. 291, 86th Cong., 1st Sess. 22 (1959), 1959–2 C.B. 770, 786.]

Thus, the problem Congress was concerned with was to provide a contingency reserve or "cushion" for stock companies comparable to the "cushion" provided mutual companies from redundant premium charges. Congress sought to achieve

---

Reserves with respect to such insurance will, therefore, be treated in the same manner as life insurance reserves for purposes of computing taxable investment income and gains from operations. The type of insurance contracts referred to are life, health, and accident policies which are not cancelable by the company but under which the insurance company reserves the right to adjust premium rates by classes, in accordance with experience under the type of policy involved. * * *"

this end by providing a deduction in section 809(d)(5) equal to 10 percent of the increase in reserves, or if greater, a deduction equal to 3 percent of premiums. The unified purpose of section 809(d)(5)—regardless of which alternative was used to mechanically compute the deduction—was solely to provide parity between mutual and stock companies as to a "cushion" for contingencies. Thus, the Senate report continues:

> To compensate for this, the House bill allows a deduction for nonparticipating insurance equal to 10 percent of the increase in life insurance reserves attributable to nonparticipating life insurance (not including annuities). Your committee *has recognized the validity of the reasons for providing such a deduction* and has therefore continued it in your committee's version of the bill. However, basing this addition, as does the House bill, only upon additions to life insurance reserves *does not take account of the mortality risk factor present in policies involving only small reserves. To overcome this deficiency,* your committee's amendments provide that a special 3 percent deduction based on premiums is to apply, instead of the 10 percent deduction, where it results in a larger deduction. This is a deduction equal to 3 percent of the premiums for the current year attributable to nonparticipating policies (other than group or annuity contracts) issued or renewed for a period of 5 years or more. [S. Rept. No. 291, *supra* at 22, 1959–2 C.B. 770, 786. Emphasis added.]

It is clear that both the basic 10-percent deduction and the alternative 3 percent of premiums deduction were intended to subserve the same purpose: to provide contingency reserve parity. The 3 percent of premiums deduction was only added as an alternative tool for achieving the same end in situations where the 10-percent deduction was perceived to be a defective tool; that is, when "additions to reserves [do] not take account of the mortality risk factor present in policies involving only small reserves."

However, in the case of policies issued for less than 5 years, Congress saw no need to correct the defect in the basic 10 percent of reserves deduction, and the critical question is why. We believe that in excluding policies issued or renewed for less than 5 years from the purview of the alternative deduction, Congress concluded that the reserves were small simply because of the relatively brief period during which the insurer was exposed to the "mortality risk factor." Congress obviously wanted to permit the alternative deduction only where the low reserves are attributable to the nature of the

policy and the manner of reserving it, and not to the short duration of the risk exposure.

Thus in 1-year renewable term, the premiums collected are calculated to cover only the costs of the ensuing year. The additional reserves arising from a level premium that exceeds the current costs in the early years do not exist, since the 1-year term period involves only the current cost of the policy each year. Similarly, where the duration of the risk insured against is very short (1 to 4 years) the risk of morbidity would remain relatively stable as compared to long-term risks; the level premiums would be much closer to current costs; and reserves would be relatively small. Since reserves would be low due to the short duration of the risk exposure, Congress excluded these policies from the benefits of the alternative deduction based on premiums paid.[8]

This situation is to be sharply distinguished from the case of long-term exposure to "a mortality risk factor" pursuant to either a noncancelable or guaranteed renewable policy. In the case of a noncancelable or guaranteed renewable policy where the duration of the mortality risk assumed extends 30 or 40 years into the future, morbidity is projected, claims are anticipated, and reserves are computed on the same basis. If reserves are low in relation to the ultimate potential risk in this situation, it must be attributable to the nature of the policy and the manner of reserving it rather than the duration of the risk exposure—whether the policy be a noncancelable policy or a guaranteed renewable policy.[9]

---

[8] While the Senate Report does not provide as clear an explanation as is desirable, the 3-percent alternative deduction apparently responds to a problem addressed in the hearings before the Senate Finance Committee for which an amendment was recommended in a form very close to that adopted by the committee. Representatives of the stock companies told the committee:

"[The basic 10-percent deduction] does not adequately provide for certain of our companies which need more security because of their *types of business* which produces relatively small reserves. This is a problem quite important to our small companies. We have many contracts of a hazardous and long-term nature and where the reserve is on average small in comparison with the hazards which we run. We are not asking protection against short-term contracts. We are speaking rather of contracts where *we cannot get off the risk by our own election* and which run for 5 years and more. [Hearings on H.R. 4245 Before the Senate Comm. on Finance, 86th Cong., 1st Sess. 132 (1959) (Testimony of Mr. John T. Acree, Jr., emphasis added). See also Hearings at 129, 130 (Testimony of Mr. Jarvis Farley).]"

[9] If a policy that is noncancelable or guaranteed renewable to age 65 is made available to a policy class aged 25 years, a level premium will be computed for the 40-

We therefore believe that the legislative purpose of section 809(d)(5) is completely consonant with the clear statutory language that guaranteed renewable policies and noncancelable policies be treated in the same manner. Since both involve the same mortality risk exposure, both qualify for the alternative deduction when that exposure equals or exceeds 5 years.

Respondent's argument for a contrary viewpoint rests essentially on his assertion that the accumulation of additional reserves is not necessary when premium rates can be adjusted. This analysis, which actually argues against allowing any deduction at all under 809(d)(5), loses sight of the purpose of the section: to narrow the disparity in the tax-free accumulation of contingency reserves between mutual and stock companies arising from the redundant premium charges made by mutuals.[10]

In issuing guaranteed renewable policies for life or to age 65, *both* mutuals and stock companies retain limited rights to raise the premium by class. Mutual companies faced with long-term risk exposure pursuant to guaranteed renewable contracts charge redundant premiums; if stock companies are not entitled to an effective deduction under section 809(d)(5), the legislative purpose of the section will be frustrated. Where the nature of the policy and the manner of reserving it made the 10-percent deduction a mechanically deficient means of achieving the end of contingency-reserve parity, Congress

---

year period over which claims must be paid pursuant to the risk assumed. Since morbidity will increase as the policy class ages, the level premium builds up reserves in the earlier years that will be drawn down to meet claims in the later years. In *both* instances, the policy is reserved over the duration of the risk assumed, or for a period of 40 years. We note that petitioner's policies herein concerned were renewable by the insured either for life or to at least age 65. None of petitioner's policies were issued for a period of less than 5 years.

[10] In many cases the deduction equal to 10 percent of reserve increases will be more advantageous than the 3 percent of premiums deduction, and the former—being greater—will be allowed. Respondent's argument that the deduction is "unnecessary" when a limited right to increase premiums exists (as in guaranteed renewable contracts) cannot be reconciled. with the allowance by Congress in the same circumstances of a deduction that in many instances is greater than the 3 percent of premiums deduction. If the limited right to adjust premiums was thought to be grounds for denying a smaller deduction, a fortiori it would be grounds for disallowing the larger deduction. Yet respondent agrees that guaranteed renewable contracts—as well as noncancelable contracts—qualify for the larger (in many cases) 10-percent deduction.

provided for the alternative 3-percent deduction. Not to allow the deduction here would give the mutuals a distinct advantage in issuing guaranteed renewable contracts which is the very set of circumstances section 809(d)(5) was specifically designed to avoid. We therefore believe respondent's interpretation not only ignores the plain language of the statute, but reflects a misunderstanding of its underlying purpose and the legislative history.

We note that concurrent with the release of this opinion, Congress passed section 1508(a) of the Tax Reform Act of 1976, 90 Stat. 1520, which retroactively amends section 809(d)(5) to produce the same result as we have reached. Our decision on the basic issue presented makes it unnecessary to decide whether petitioner is entitled to the 2-percent deduction allowed by section 809(d)(6) on its guaranteed renewable contracts.[11]

*Decisions will be entered under Rule 155.*
Reviewed by the Court.

SIMPSON, *J.,* concurring: Section 1508(a) of the Tax Reform Act of 1976, 90 Stat. 1520, 1741, has amended section 809(d)(5) by adding the following sentence:

For purposes of this paragraph, the period for which any contract is issued or renewed includes the period for which such contract is guaranteed renewable.

Such amendment is applicable to taxable years beginning after December 31, 1957. Tax Reform Act of 1976, sec. 1508(b). In the light of this amendment, I agree with the result of the majority and find it unnecessary to express any views

---

[11] SEC. 809. IN GENERAL.

(d) DEDUCTIONS.—For purposes of subsections (b)(1) and (2), there shall be allowed the following deductions:

\* \* \*

(6) CERTAIN ACCIDENT AND HEALTH INSURANCE AND GROUP LIFE INSURANCE.—An amount equal to 2 percent of the premiums for the taxable year attributable to accident and health insurance contracts (other than those to which paragraph (5) applies) and group life insurance contracts. The deduction under this paragraph for the taxable year and all preceding taxable years shall not exceed an amount equal to 50 percent of the premiums for the taxable year attributable to such contracts.

concerning the interpretation of the statute prior to its amendment.

RAUM and TANNENWALD, *JJ.,* agree with this concurring opinion.